STATE OF INDIANA *v.* BUXTON.

[No. 29,534.  Filed March 20, 1958.]

*Edwin K. Steers,* Attorney General, *Owen S. Boling,* Deputy Attorney General, and *Harry F. McCalla,* Prosecuting Attorney, 6th Judicial Circuit, Scottsburg, for appellant.

*Julian D. Pace,* of Indianapolis, for appellant Jay L. Foster, Fire Marshal.

*John R. Dollens,* of Scottsburg, for appellee.

ACHOR, J.—In September, 1955 a restaurant building, owned by appellee, located near the town of Blocher, Indiana, caught fire causing the interior to be badly burned. On September 7, 1955 Howard Boegaholtz, a deputy state fire marshal, and Robert Campbell, a member of the National Board of Fire Underwriters, investigated the fire. The two men arrived at approximately 10 o'clock A. M. and entered through an unlocked door. During the investigation appellee Buxton arrived at the scene. He talked with the men for a few minutes. He neither consented nor objected to the investigation which continued after his departure.

The investigation indicated that the fire had originated in the utility room at a hole in the floor 10 to 12 inches in diameter. Boegaholtz and Campbell cleared the debris from the hole and found no defective wiring or other evidence that the fire was the result of accident, neither did they find evidence which pointed to an incendiary origin. At this point Boegaholtz went to Scottsburg, a distance of approximately eight miles, to call in a state police photographer at Seymour. No attempt was made to obtain a search warrant and none was had any time during the investigation.

Later Boegaholtz, Campbell and state trooper Loy, the photographer, met at the scene. While Loy was taking

a picture of the hole he discovered a hot plate at the bottom. Further examination revealed a cord for the hot plate, a pile of torn newspapers and a gunny sack soaked in fuel oil. These materials were seized as evidence.

Upon the strength of this evidence, Buxton was arrested and placed on trial for arson. At the trial the state attempted to introduce its Exhibit No. 5, which included the hot plate and its cord, the oil-soaked gunny sack and the torn newspapers. Appellee had previously made a motion to suppress the evidence and objected on the ground that it was obtained in violation of Art. 1, §11 of the Indiana Constitution, which prohibits unreasonable search and seizure. The court sustained the objection and Buxton was acquitted. The state appeals to this court on a reserved question of law only, claiming that under the Fire Marshal's Act no search warrant was necessary and therefore that the court erred in sustaining the objection of appellee to the admission of the above evidence.

The general question then which this court must determine is whether the evidence so obtained was taken unlawfully in violation of appellee's constitutional rights under Art. 1, §11, *supra,* which provides as follows.:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Incidental to the above major question the following specific questions must be determined: (1) Whereas the Fire Marshal Act provides that the fire

marshal or his deputies ". . . may, at all reasonable hours enter any building, property or premises . . . for the purpose of making an inspection or investigation which, under the provisions of this act . . . he or they may deem necessary to be made." §20-808, Burns' 1950 Repl. (Acts 1927, ch. 115, §5, p. 298.) Does said provision purport to authorize searches and seizures *without a search warrant* and the subsequent use of the evidence so obtained in a criminal prosecution for arson against the owner of the property? (2) If so, does this and similar provisions of the Fire Marshal Act make the act unconstitutional?

The right against unreasonable search and seizure is a right guaranteed by governments of free peoples as distinguished from the power formerly exercised by English kings and by the dictators of police states today. Since the advent of the writ of assistance issued in England under the statute of 12 Chas. II (1672), allowing the king's messengers to enter any and all places and search and seize papers and evidence of any kind, such infringement upon liberty was and has been continually fought. The early decision of Lord Camden in *Entick* v. *Carrington* (1765), 19 Howell's State Trials 1029, held these general writs to be invalid and laid the basis for the Fourth Amendment. Thus the doctrine "Every man's home is his castle" was founded.[1]

Our courts have consistently maintained the position that evidence obtained through unreasonable

---

1. For an excellent commentary regarding the historical background of this most significant guarantee of men's freedom, the state quotes extensively from the learned opinion of Judge Fellows of the Michigan Supreme Court in *State* v. *Marxhausen* (1919), 204 Mich. 559, 171 N. W. 557, which case is annotated in 3 A. L. R., 1506.

search and seizure may not be used in evidence in a criminal case. *Callender* v. *State* (1922), 193 Ind. 91, 138 N. E. 817; *Batts* v. *State* (1924), 194 Ind. 609, 144 N. E. 23.[2]

In the more recent case of *Dalton* v. *State* (1952), 230 Ind. 626, 632-633, 105 N. E. 2d 509, this court stated:

> " . . . Evidence obtained as a result of an unreasonable search and seizure in violation of the constitutional prohibition, 'whether it be the instruments used to commit the crime, or oral evidence of what was found or seen in such unlawful search—is incompetent against the accused, and a conviction based thereon ought to be reversed. *Boyd* v. *United States* (1885), 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; *Weeks* v. *United States* (1913), 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B 834, Ann. Cas. 1915C 1177; *Silverthorne Lumber Co.* v. *United States* (1919), 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319.' *Flum* v. *State* (1923), 193 Ind. 585, 590, 141 N. E. 353, *supra*. See also *Dearing* v. *State* (1948), 226 Ind. 273, 79 N. E. 2d 535."

The problem which we must resolve is that of harmonizing the constitutional right against unreasonable search and seizure with the rights of people collectively

---

2. The doctrine was well stated in *Weeks* v. *United States* (1913), 232 U. S. 383, 391-392, 58 L. Ed. 654, 34 S. Ct. 341, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177: "The effect of the Fourth Amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain convictions by means of unlawful seizures . . . should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights."

to life, liberty, *safety* and the pursuit of happiness as guaranteed by our state and federal constitutions. Art. 1, §1 of the Constitution of the State of Indiana, among other things, provides as follows: ". . . that all power is inherent in the People; and that all free governments are, and of right ought to be, founded on their authority, and instituted for their peace, *safety* and *well-being*. . . ." (Our italics.)

What kind of legislation may be passed for the safety of its people without violating other sections of the constitution? Admittedly the safety of the people is the first law of the land and will prevail as against private rights provided by the constitution.[3] But to be justified, such encroachment upon private rights must be reasonable and necessary.

Admittedly the authority which the fire marshal or his deputies had, if any, to enter said premises and to make inspections and investigations is by virtue of and pursuant to the provisions of what is known as the Fire Marshal law of the State of Indiana. Relevant parts of such legislative enactments deemed to have important bearing on this case are as follows:

§20-802, Burns' 1950 Repl.:

"It shall be the duty of the state fire marshal to enforce all laws of the state and the ordinances of the several cities and towns in Indiana, providing for any of the following:

. . .

"4. The investigation, prosecution and suppression of the crime of arson and other crimes

---

3. *Finerty, Auditor* v. *State ex rel. School City of Gary* (1938), 213 Ind. 470, 474, 12 N. E. 2d 941; *Albert* v. *Milk Control Board of Indiana* (1936), 210 Ind. 283, 290, 200 N. E. 688; *Schenck* v. *United States* (1919), 249 U. S. 47, 63 L. Ed. 470, 39 Sup. Ct. 249; *Frohwerk* v. *United States* (1919), 249 U. S. 204, 63 L. Ed. 561, 39 Sup. Ct. 249.

connected with the destruction or attempted destruction of property by fire or explosion, and the crime of swindling or defrauding an underwriter or attempting to do so; and for the investigation of the cause, origin and circumstances of fires.

"It shall be the further duty of the state fire marshal to make, . . . inspections of property and place orders thereon, when needed, for the prevention of fires and fire losses, and to enforce and carry out such orders, . . ."

§20-807:

. . .

"The state fire marshal, his deputies or assistants, upon the complaint of any person or whenever he or they shall deem it necessary, shall inspect all buildings, premises, property, conditions, and things comprehended in this act within their jurisdiction."

§20-808:

"The state fire marshal or his deputies may, in addition to the investigation made by any of his assistants, at any time investigate as to the origin or circumstances of any fire occurring in this state. . . .

. . .

"The state fire marshal or his deputies or any of his assistants may at all reasonable hours enter any building, property or premises within his jurisdiction for the purpose of making an inspection or investigation which, under the provisions of this act or any law which may have been or may be from time to time enacted requiring the fire marshal to enforce or carry out, he or they may deem necessary to be made."

It is urged by the state that investigations as to the cause of fires, authorized by the law, are necessary to the public safety as a means of fire prevention. Furthermore, the state argues that the circumstances surrounding such a situation makes it necessary that such

investigations be initiated without a search warrant because, the cause of fire being unknown, there is no probable cause upon which a search warrant could issue.[4]

Finally the state contends that it being necessary to initiate such investigations without a search warrant, evidence so obtained as to the cause of such fire, whether it was of accidental or incendiary origin, should be admissible in evidence by the state in any action wherein the cause of such fire is an issue.

The state contends that to hold otherwise would, for all practical purposes, be to deny the state the right to prosecute persons for arson in every instance where, at the outset, the cause of a fire is unknown. Upon this issue the state's contention is not well taken. Under the facts before us, it cannot well be maintained that the search made was a mere civil inspection and, even if it began as such, as the state contends it may have, no good reason is shown why a search warrant was not obtained at the point in time when evidence believed to be incriminating was discovered. From the point in time, when the investigation was conducted for the purpose of obtaining incriminating evidence against the owner of the property, a search warrant was necessary. In support of its position to the contrary the state has cited numerous cases in which the right of inspection has been upheld without the neces-

---

4. "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, *but upon probable cause,* supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." (Our italics.) Art. 1, §11, Constitution of Indiana.

". . . in most jurisdictions . . . probable cause must be made to appear to the officer authorized to issue the warrant, . . ." 79 C. J. S. Searches and Seizures, §74(f) (1), p. 872. See: *Callender* v. *State* (1922), 193 Ind. 91, 138 N. E. 817.

sity of a search warrant.[5] However, it must be noted that in each instance referred to the inspection or investigation was civil and not criminal in nature. It was permitted as relating to the regulation of the use or occupancy of the property itself. In no instance was the information obtained or the evidence seized used in a criminal prosecution against the proprietor of the property.

Having held that a search warrant is required by the fire marshal and his deputies in criminal investigations regarding the cause of fires, not made at the time of the fire, we are now required to consider whether or not the Fire Marshal law is unconstitutional because of the duty and authority it vests in the fire marshal and his deputies without reference to a search warrant. If the law is construed to provide that criminal investigations may be made without a search warrant, the law is unconstitutional, for the reasons above stated. If, however, the law can be construed to have adopted and incorporated by implication the constitutional requirement that the fire marshal and his deputies obtain a search warrant before making an investigation intended to lead to a criminal prosecution, it is constitutional. In deciding this question we are committed to holding the statute constitutional, if

5. The right of inspection has been sustained in the following instances: (1) Inspections relating to the supply of milk for human consumption, *Albert* v. *Milk Control Board of Indiana* (1936), 210 Ind. 283, 200 N. E. 688; (2) inspection relating to fitness of houses for human habitation, *Richards* v. *City of Columbia* (1956), 227 S. Car. 538, 88 S. E. 2d 683; (3) inspection of cattle for tuberculosis without a warrant, *Dederick* v. *Smith* (1936), 184 A. 595, app. dism'd 229 U. S. 506, 81 L. Ed. 375, 57 S. Ct. 38.

Courts have also upheld the right to enter premises for the purpose of inspecting places of business, such as small loan companies, junk dealers, optometrists and public lodging houses, *Financial Aid Corp.* v. *Wallace* (1939), 216 Ind. 114, 23 N. E. 2d 472; *Kelleher* v. *Minshull* (1941), 11 Wash. 2d 380, 119 P. 2d 302; *Mansbach Scrap Iron Co.* v. *City of Ashland* (1930), 235 Ky. 265, 30 S. W. 2d 968.

we can. *State ex rel. Robertson* v. *Circuit Court of Lake Co.* (1938), 215 Ind. 18, 17 N. E. 2d 805; *Spohn* v. *Stark, Treas.* (1926), 197 Ind. 299, 150 N. E. 787. In doing so, every reasonable presumption should be exercised in favor of the validity of a statute. *State ex rel. Mavity* v. *Tyndall* (1947), 225 Ind. 360, 74 N. E. 2d 914, Cert. den. 68 S. Ct. 609, 33 U. S. 834, 92 L. Ed. 1118, rehearing den. 68 S. Ct. 732, 333 U. S. 858, 92 L. Ed. 1138.

In construing this law, there being no clear expression and intendment to the contrary, we must assume that the legislature when they passed this statute intended that all the constitutional safeguards were to be incorporated in it. In *Klink* v. *State ex rel. Budd* (1935), 207 Ind. 628, 632, 194 N. E. 352, 99 A. L. R. 317, this court stated: ". . . It is our duty, if possible, to construe statutory enactments as conforming to the limitations imposed by the Constitution. . . ." It is the duty of the court to adopt a construction which will uphold a statute and bring it in harmony with the constitution if its language makes it possible. *State* v. *Clements* (1939), 215 Ind. 666, 22 N. E. 2d 819; *Ehle, Trustee* v. *State ex rel.* (1922), 191 Ind. 502, 133 N. E. 748.

Upon examination of the Fire Marshal law we note that it makes no reference to the use or non-use of search warrants in connection with the inspections and investigations authorized by the fire marshal and his deputies. Therefore, we cannot say that it clearly purports to grant authority to make criminal investigations without resort to this constitutional limitation upon the police power of the state. On the other hand, the law does expressly describe the police power of the fire marshal and his deputies ". . . in all cases . . . of arson . . ." as that ". . . pos-

sessed by any constable, sheriff or police officer of the state." §20-802, *supra*. The above named officers have no authority of search and seizure, preliminary to a criminal prosecution, without a search warrant.

We therefore hold that under the Fire Marshal law the fire marshal and his deputies and agents must obtain a search warrant prior to searching a person's dwelling, effects or possessions for the purpose of obtaining evidence to be used in criminal prosecution, and that this basic constitutional requirement can be and is by implication incorporated as a necessary part of the responsibility and activity authorized by the law.

We conclude that the state's Exhibit No. 5 was properly excluded from the evidence.

Emmert, C. J., concurs in the result.

Arterburn, Bobbitt & Landis, JJ., concur in the opinion.

NOTE.—Reported in 148 N. E. 2d 547.