Dominick C. MORAN, Andrew Holland,
Appellants–Defendants,

v.

STATE of Indiana, Appellee.

No. 49SO5–9412–CR–1192.

Supreme Court of Indiana.

Dec. 12, 1994.

Rehearing Denied May 12, 1995.

Robert W. Hammerle, Hammerle & Foster, and John M. Moses, Indianapolis, for appellant.

Pamela Carter, Atty. Gen. of Indiana and Joseph F. Pieters, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellees.

## ON PETITION TO TRANSFER

DeBRULER, Justice.

This case comes to us on cross-petitions to transfer from a Court of Appeals decision of an interlocutory appeal of the results of a suppression hearing in Marion Municipal Court. Ind. Appellate Rule 11(B); Ind. Appellate Rule 4(B)(6). The trial court ruled that items taken from a private residence in a search pursuant to warrant would be admissible during appellants' trial on criminal charges of possession of more than thirty (30) grams of marijuana, a Class D felony. Ind.Code § 35–48–4–11 (Burns 1985). The Court of Appeals affirmed. *Moran v. State* (1993), Ind.App., 625 N.E.2d 1231. We grant transfer in order to resolve the disagreement within the Court of Appeals. *Bell v. State* (1993), Ind.App., 626 N.E.2d 570; App.R. 11(B)(2)(c).

The issues considered in this appeal are:

1) whether police conduct in taking and examining trash put out for pickup was consistent with the protection afforded by the IND. CONST. art. I, § 11, and by the U.S. CONST. amend. IV;

2) whether the police conduct in searching a house and seizing items from it pursuant to a search warrant was consistent with the protection afforded by the IND. CONST. art. I, § 11, and by the U.S. CONST. amend. IV.

### Facts

From May of 1991 to April of 1992, the Indiana State Police ("ISP") operated Circle City Hydroponics ("CCH") in Zionsville, Indiana. By supplying hydroponic equipment the ISP intended to identify individuals who might be cultivating marijuana and to develop leads for further investigation. CCH specialized in products and supplies commonly used to illicitly cultivate marijuana, though CCH products could also be used in legitimate hydroponic activities.

Between August 7, 1991 and February 18, 1992, Holland, sometimes accompanied by another man, visited CCH several times. The two men spent a total of $327.72 on supplies which could be used for indoor cultivation of marijuana. They had numerous conversations with undercover investigators at the store, including discussions about the

growing facilities in Holland's home. The last of these conversations occurred on October 21, 1991.

Because of Holland's patronage of CCH, the ISP investigated further. Beginning in August, 1991, and ending April 9, 1992, the ISP monitored Holland's electricity consumption, which averaged almost twice that of the prior resident. On January 8, 1992, the ISP conducted thermal imaging[1] surveillance of Holland's home. This detected several warm areas in Holland's home which were not detected in any other residences in the immediate neighborhood.

At approximately 5:00 a.m., on or about January 22, 1992, two ISP officers drove to Holland's house in a pickup truck. The house sat back fifty feet from the street. Several plastic garbage cans were sitting about a foot from the street in front of the house, near the mail box. They had lids. They had been set out for the trash pickup scheduled for that day. The contents of the cans included both loose material and material in several common opaque plastic garbage bags. The cans were emptied into the back of the pickup truck and taken to the ISP office, where the garbage bags were opened and sifted through for contraband and evidence. ISP officers found a green leafy material later determined to be marijuana plant clippings.

On April 20, Federal Magistrate Judge J. Patrick Endsley, at the behest of the U.S. Attorney, issued a warrant supported by an affidavit of ISP Officer Timothy J. McClure, commanding the search of Holland's residence by special federal agents, with return to be made to federal court. ISP officers assisted in the execution of this warrant on April 22. Moran, Holland and another individual were within the residence at that time. Officers found and seized three bags of material believed to be marijuana, several marijuana plants growing in buckets in various locations in the house, and additional plants in the yard. In Marion Municipal Court on May 1, Moran and Holland were each

charged by information with possession of over thirty (30) grams of marijuana.

On August 3, Holland filed his motion to suppress evidence, requesting the court to suppress all evidence and testimony related to the warrantless search of Holland's trash and to the execution of the search warrant on April 22. The claim was based upon both the U.S. Constitution's Fourth Amendment and Indiana Constitution, Article 1, Section 11. On September 2, Moran filed a similar motion and the court conducted an evidentiary hearing on both motions to suppress. On October 8, following a hearing, the court denied those motions.

## I

■ This warrant was issued by a federal Magistrate applying federal statutory and constitutional principles. In that federal process the Indiana provision regarding searches and seizures had no application. *United States v. Dudek*, 530 F.2d 684 (6th Cir.1976). Such provision is however, like the federal one, applicable in this appeal as it was when state Judge Wiles ruled on the question of whether the prosecution should be permitted to convict upon evidence that was that warrant's product. Indiana judges serve as judicial officers of a sovereign power, the State of Indiana. They must respect and adjudicate state constitutional claims when made. This is a separate and distinct dimension of their offices. In this dimension Indiana law is binding, while federal law and the law of sister states may have persuasive force. *Priest v. State* (1979), 270 Ind. 449, 386 N.E.2d 686. Indiana judges also have the separate duty to respect and adjudicate claims when made based upon federal constitutional rights protected from state impingement. In this dimension, federal law is binding. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Dixon v. State* (1946), 224 Ind. 327, 67 N.E.2d 138 (direct application of the Fourteenth Amendment of the U.S. Constitution); *State v. Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874. (direct

---

1. A thermal imaging device detects temperature differences of an object or structure being ob-    served.

application of the Fourth Amendment of the U.S. Constitution).

Article I, § 11, the search and seizure provision of the Bill of Rights of the 1851 Indiana Constitution applicable to this case, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

This same provision appeared as Section 8 of the 1816 Constitution of Indiana. It was inserted in both constitutions without significant debate or change. Like provisions appeared shortly after the Declaration of Independence in the constitutions of the American states, the first in the 1776 Constitution of Virginia. *Sources of Our Liberties* (Perry and Cooper ed., American Bar Foundation, 1959). The same provision then appeared in 1791 in the Bill of Rights to the U.S. Constitution as the Fourth Amendment. The framers of those earliest provisions, like the framers of the 1816 Indiana Constitution, undoubtedly intended by this provision to prevent abuses of the police power like those experienced at the hands of the British during colonial times. *See Boyd v. United States,* 116 U.S. 616, 625–626, 6 S.Ct. 524, 529–530, 29 L.Ed. 746, 749 (1886).

The text of the provision is made up of two clauses. The first prohibits any search or seizure that is unreasonable and the second conditions the issuance of warrants to search or seize upon specificity and probable cause. The first clause recognizes the dangers of abusive searches, with or without warrants. *See United States v. Leon,* 468 U.S. 897, 960, 104 S.Ct. 3405, 3445, 82 L.Ed.2d 677, 722 (1984) (Stevens, J., dissenting). The reasonableness clause protection is broader and more general. The warrant clause protection is the more specific.

Because we read this section of our constitution as having in its first clause a primary and overarching mandate for protections from unreasonable searches and seizures, the reasonableness of the official behavior must always be the focus of our state constitutional analysis. The state standard of reasonableness frequently requires that police action occur only with a judicial sanction. The purpose of such a requirement is not to interfere with police officers in their legitimate decision-making, but to make certain that decisions requiring the overriding of Hoosiers' constitutionally-guaranteed protections are made by a neutral judicial official. The reasonableness standard explains the requirement that, absent exigent circumstances, the police must "knock and announce" before conducting a search, even when executing a valid search warrant. *State v. Dusch* (1972), 259 Ind. 507, 510–511, 289 N.E.2d 515, 516–517.[2] The "knock and announce" requirement emphasizes the importance of the reasonableness. The police possessed a properly issued warrant but, because failing to knock on the door and announce their authority was unreasonable, the evidence seized was excluded.

This preference for the warrant is based on the assumption that a warrant requirement would effectively encourage reasonable behavior on the part of government officials. It also reflects a well-grounded belief that many searches require a warrant in order to be reasonable.

Over the years following our adoption of the exclusionary rule, this Court consistently expanded the protection provided by the exclusionary rule. It was applied to require that a fire marshal seeking evidence of arson obtain a search warrant. *State v. Buxton* (1958), 238 Ind. 93, 148 N.E.2d 547. It excluded evidence where police officers had enough evidence to obtain a search warrant but failed to get one. *Dearing v. State* (1948), 226 Ind. 273, 79 N.E.2d 535. The rule mandated excluding evidence obtained in a consent search based on the permission of the wife whose name appeared on the certificate of title, when the husband had custody, control, and possession. *Dalton v. State* (1952), 230 Ind. 626, 105 N.E.2d 509. *See*

---

**2.** Reasonable requirements are frequently found embedded in the common law of the United States. *See e.g. Bell v. Clapp* (1813), N.Y.Sup.Ct., 10 John.R. 263.

*also Conner v. State* (1929), 201 Ind. 256, 259, 167 N.E. 545, 546. The goal of the inquiry remained unchanged, to determine the reasonableness of the official action.

■ Turning for the moment to the subject of appellants' federal claim, we conclude that the trial court and the court of appeals were correct in rejecting appellants' federal constitutional claim based upon the Fourth Amendment. Clearly, it afforded no protection against the acts of these police in taking and inspecting the trash set out by appellants at the curb for pickup. *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). That case governs the federal claim, but not the state constitutional claim.

Returning to the state claim at hand, we note (as did the Court of Appeals in its careful opinion) that other states have considered this issue under their own search and seizure provisions with divergent results. In *State v. Hempele* (1990), 120 N.J. 182, 576 A.2d 793, the Supreme Court of New Jersey held in applying its own search and seizure provision found that there was an expectation of privacy in garbage as against police intrusion. In *State v. DeFusco* (1993), 224 Conn. 627, 620 A.2d 746, the Supreme Court of Connecticut followed the *Greenwood* path in applying its own search and seizure provision. The court found no expectation of privacy in trash. The legal analysis in each case tracks the two-prong test from *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), namely 1) did the person exhibit an actual expectation of privacy; and 2) does society recognize that expectation as reasonable? *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). We are not in accord with that approach.

■ The decisions of this court prior to 1961, the date upon which the Fourth Amendment became applicable to the states, are most helpful. In them there is no overlapping of state and federal analysis. They demonstrate that the purpose of Article 1, § 11 is to protect from unreasonable police activity, those areas of life that Hoosiers regard as private. The provision must receive a liberal construction in its application to guarantee the people against unreasonable

search and seizure. *Idol v. State* (1954) 233 Ind. 307, 119 N.E.2d 428. It protects persons, houses, papers and effects. Houses and premises of citizens receive the highest protection. *Gmeiner v. State* (1925), 197 Ind. 43, 149 N.E. 728. An opaque bag used to hold or transport diverse items is undoubtedly an effect entitled to protection. *See Acevedo v. California,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). The right protected is "personal" in that it arises where there is an individual interest in the subject matter of the search susceptible of transgression, in that it may be waived by consent or abandonment, and in that it does not survive death. *McAdams v. State* (1948), 226 Ind. 403, 81 N.E.2d 671; *Speybroeck v. State* (1926), 198 Ind. 683, 154 N.E. 1; *Frye v. State* (1926), 197 Ind. 615, 151 N.E. 728. *See also Ravellette v. Smith,* 300 F.2d 854 (7th Cir.1962). The protection afforded is against official and not private acts. *Knotts v. State* (1963), 243 Ind. 501, 187 N.E.2d 571. "In the law of searches and seizures, the term 'search' implies prying into hidden places for that which is concealed." *Lindsey v. State* (1965), 246 Ind. 431, 204 N.E.2d 357, 362 (quoting *McCoy v. State* (1960), 241 Ind. 104, 115, 170 N.E.2d 43, 48.

This Court first explicitly adopted the exclusionary rule in *Callender v. State* (1922), 193 Ind. 91, 138 N.E. 817. In that case we spoke unequivocally, "If the property was secured by search and seizure under the pretext of a search warrant, which was invalid for any reason, then the property so seized could not be used as evidence against the appellant and its admission over his objection was prejudicial error." *Callender,* 193 Ind. at 96, 138 N.E. at 818.

Appellants Moran and Holland claim that they had a reasonable expectation of privacy in their trash and that such privacy requires that their state claim for suppression to be sustained. *Blalock v. State* (1985), Ind., 483 N.E.2d 439. *Blalock* is a Fourth Amendment case that relied on the two-pronged test of *Katz.* We are not persuaded that such a test should be used when applying the state reasonableness standard under Article 1, § 11.

■ We do not lightly entertain intrusions on those things that we regard as private, i.e. concealed and hidden.[3] However, at the same time the inhabitants of this state have always valued neighborliness, hospitality, and concern for others, even those who may be strangers. Here, an open front walk leading to the front porch of a house is accurately judged by the passerby to be an open invitation to seek temporary shelter in the event of a sudden downpour. Stepping on that part of a yard next to the street or sidewalk to seek shade from a tree or to pick edible yet valueless plants growing in the lawn has been regarded proper conduct. It is permissible for children at play on the street or in the alley to examine the contents of garbage cans to find interesting items, so long as they do not make a mess. It is not infrequent that valuable items are placed in the trash in hopes that someone passing by will see them there and will take them and make good use of them. It has often been said that if you do not want others to know what you drink, don't put empties in the trash. "It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public." *Greenwood*, 486 U.S. at 40, 108 S.Ct. at 1628–1629, 100 L.Ed.2d at 36–37.

One who places trash bags for collection intends for them to be taken up, and is pleased when that occurs. Here, the police did not trespass upon the premises to get the bags. *See State v. Tanaka* (1985), 67 Haw. 658, 701 P.2d 1274. They came by early in the morning when their actions were unlikely to be seen in the neighborhood and commented about. There was no disturbance. Appellants claim that local ordinances regulating the manner in which trash is to be set out and handled supports their claim for suppression. The police here conducted themselves in the same manner as would be appropriate for those whose duty it was to pick up. Given these attendant circumstances, and while realizing that Hoosiers are not entirely comfortable with the idea of police officers casually rummaging through trash left at curbside, we cannot say that the

police activity here was unreasonable under Article 1, § 11 of the Indiana Constitution and that the police must refrain from such conduct. We therefore conclude that the evidentiary basis for the search warrant was not tainted because it included evidence of the contents of the trash bags.

## II

Appellants next claim is that even if the affidavit in support of the warrant properly included reference to the items obtained from their trash, the information contained in the affidavit was stale and as a result did not adequately support probable cause. This claim is both state and federal.

■ Article 1, § 11, establishes the basic requirement as aforesaid of probable cause for the issuance of a search warrant. It is a judicial function to issue a warrant to search for evidence of crime. I.L.E., Searches and Seizures, § 23; *Mitchell v. State* (1953), 233 Ind. 16, 115 N.E.2d 595. A warrant must be based upon an affidavit, or testimony duly preserved, relating facts susceptible of being true or false, which rationally support the conclusion that evidence of crime will be found. Ind.Code § 35–33–5–2 (Burns Supp.1992); *Wallace v. State* (1927), 199 Ind. 317, 157 N.E. 657. Facts supported by reliable hearsay qualify.

The search warrant was issued on April 20, 1992 and executed on April 22. At the time that the search of the house was actually conducted, the most recently acquired evidence was nearly two weeks old. The conversations between Holland and the police informant at CCH discussing indoor cultivation were more than six months old. The crucial trash search had been conducted three months prior to the execution of the warrant. The thermal imaging was performed even earlier than the trash search. Juxtaposed to this seemingly extended period of time is the fact that it was a marijuana growing operation which was being tracked, not the mere presence in a house of marijuana on one or several occasion for personal use. According to the affidavit, marijuana

---

**3.** If one considers "concealed" to be an objective inquiry and "hidden" to be subjective, then this standard might be understood as a precursor to *Katz*.

crops grow in ninety day cycles, and based thereon there was reason to believe that growing activities were ongoing over a protracted amount of time. Beds and other installations required for such an activity would not be easily moved or exhausted.

■ We turn now to appellants' federal claim. That claim is also based upon staleness as undermining the facts alleged in the affidavit as they may support probable cause. Assuming *arguendo* that this claim of insufficient probable cause for the warrant is valid, exclusion of the product of the warrant under the Fourth Amendment would not be warranted. In this federal claim, federal law is binding. This affidavit contained no false or misleading information. The facts supported presence of considerable cultivation of marijuana. The federal magistrate did issue this warrant. The issue of the timeliness of information is often present and left for resolution by the judge. The delay here would not have rendered official belief in the presence of marijuana in the house entirely unreasonable. The ISP was therefore acting in good faith in executing this warrant, and the Fourth Amendment does not require suppression. *Leon*, 468 U.S. at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698; *Bradley v. State* (1993), Ind., 609 N.E.2d 420.

Returning to the state claim, it is undoubtedly true that time can be a critical factor in determining probable cause. *Williams v. State* (1981), Ind., 426 N.E.2d 662, 667. While it is difficult to formulate precise rules governing staleness we cannot leave the question unaddressed. More than a quarter century ago this Court addressed concerns of staleness in drug cases.

> Although there can be no precise rule as to how much time may intervene between the obtaining of the facts and the issuance of the search warrant, in dealing with a substance like marihuana, which can be easily concealed and moved about, probable cause to believe that it was in a certain building on the third of the month is not probable cause to believe that it will be in the same building eight days later.

*Ashley v. State* (1968), 251 Ind. 359, 368, 241 N.E.2d 264, 269.

■ The information reiterated in the statement of facts, above, shows the state did not seek to support the timeliness of its information by simply adding the words "continuous criminal activity" to its affidavit. "[M]arijuana ... can be expected in the natural course of events to be smoked or moved into commercial channels...." *Williams*, 426 N.E.2d at 667. Here the facts in the affidavit permitted the conclusion of an ongoing growing enterprise and not merely the conclusion that small amounts of marijuana were present in a building for personal use or sale, heretofore deemed stale after eight days. The trial court found that there existed no probable cause for the issuance of the search warrant because the supporting evidence was fatally stale. This was error. We nevertheless affirm the trial court ruling that Article 1, § 11, does not require exclusion of the product of this search warrant. The search pursuant to this warrant was reasonable under the state standard of reasonableness. *See e.g. Pettit v. State* (1934), 207 Ind. 478, 188 N.E. 784. *See also* Craig Bradley, *Two Models of the Fourth Amendment*, 83 Mich.L.Rev. 1468, 1481–1491. In light of this holding, there is no occasion to consider the trial court's application of the good faith exception (as codified in Ind.Code § 35–37–4–5 (Burns 1985)).

## Conclusion

Accordingly, this Court now grants transfer, vacates the decision of the Court of Appeals, affirms the denial of the motion to suppress, and remands this case to the trial court for further consistent proceedings. App.R. 11(B)(3).

GIVAN, J., concurs.

DICKSON, J., concurs and dissents with separate opinion.

SULLIVAN, J., concurs in part I and dissents from part II of this opinion.

SHEPARD, C.J., did not participate in this case.

SHEPARD, Chief Justice, not participating.

I fully expected to sit in this appeal, until a spate of press reports appeared just before the decision was to be issued. Recent publicity about my own experience as the target of a trash search ("Judge Check's Out Colleague's Trash," Nat'l.Law J., Dec. 5, 1994, at A10), suggests to me that recusal is the best course. For the moment at least, I do not feel dispassionate on the subject of trash searches.

DICKSON, Justice, concurring and dissenting.

I concur in the majority's analysis of Article 1, Section 11 of the Indiana Constitution and in the application of its independent reasonableness standard rather than the two-prong test used in federal Fourth Amendment jurisprudence. I also concur in Part II of the majority opinion.

However, I dissent to the majority's application of the Section 11 reasonableness standard to condone warrantless police searches of closed trash containers. I remain convinced that Indiana citizens should be able to dispose of their trash without relinquishing their privacy.

The waste products from homes can reveal intimate details of private religious beliefs, finance, political interests, medical and legal matters, personal relationships, and numerous other confidential matters. In today's predominantly urban and suburban society, it is no longer reasonable (and in many situations unlawful) privately to burn or bury unwanted waste. People must necessarily rely upon governmental or commercial trash collection systems to achieve anonymous disposal. The contents of sealed trash containers intended for such disposal ought to be deemed as included among the "papers and effects" protected against unreasonable search and seizure by Section 11 of Indiana's Bill of Rights.

When there is reasonable cause to believe that the contents of a particular home's curbside trash may provide evidence of specific criminal activity, the police may seek a warrant authorizing its search and seizure. This assures a proper balance between effective law enforcement and the preservation of personal privacy free from unfettered government intrusion. I therefore conclude that it is unreasonable under Article 1, Section 11 of the Indiana Constitution to permit warrantless searches and seizures by police of private trash left for curbside pick-up and disposal.