## FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**LINDA G. NICHOLSON**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LEONDRE WOODSON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1109-PC-466 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Kenneth G. Todd, Judge
Cause No. 53C03-0805-PC-1062

**May 2, 2012**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Petitioner Leondre Woodson appeals from the post-conviction court's denial of his petition for post-conviction relief ("PCR"), in which Woodson claims that he received ineffective assistance of trial counsel. We affirm.

**FACTS AND PROCEDURAL HISTORY**

The facts underlying this post-conviction proceeding were detailed by this court in our unpublished disposition of Woodson's direct appeal:

> On August 27, 2005, Woodson was a passenger in the front seat of a rental car that was pulled over for speeding. Woodson and the driver, Chinedu Onyeji, were driving to Bloomington. Bloomington Police Officer Walter Harris approached the car and asked the driver for his license and registration. When Onyeji opened the glove compartment to get the car rental agreement, the police officer observed Onyeji push a handgun to the side of the glove compartment.
> The police officer subsequently ran an inquiry on the handgun to see if it was stolen. He was advised the gun was not stolen and that it had been registered to Onyeji and that Onyeji did have a valid permit to carry a firearm.
> Further investigation revealed that the car rental agreement indicated Onyeji had rented the car and included Onyeji's signature. The rental agreement listed Woodson as an additional driver. Officer Harris stated Woodson acknowledged that he was on the car rental agreement as an additional driver, that he had paid for the car rental, and that he had driven the car. Onyeji told the officer the two were returning from a one-day trip to Gary, Indiana. Woodson told the police officer they went to Gary because he needed to obtain his birth certificate and an identification card and they made stops at the Bureau of Motor Vehicles and at his friend's house.
> Based on the circumstances of the stop, Officer Harris stated he suspected Woodson and Onyeji might be involved in drug trafficking. Officer Harris noted the two appeared nervous, had paid for a car rental with cash, and had taken a one-day trip to Gary. Officer Harris asked Onyeji if he could search the trunk of the vehicle, but Onyeji declined to allow the search. Officer Harris asked Woodson for permission to search the trunk, and Woodson consented to the search.
> The officer opened the trunk and found it to be empty. He then opened the spare tire compartment and observed two bags of a white powdery substance and a handgun. Subsequent testing showed the bagged

2

substance was cocaine. The separate amounts weighed 113.96 grams and 13.34 grams respectively. Woodson denied knowledge of the items.

Woodson and Onyeji were arrested. During a later statement to the police, Onyeji told the police that the gun in the trunk was Woodson's. Woodson was charged with Count I, dealing in cocaine, a Class A felony; Count II, possession of cocaine in an amount greater than three grams, a Class C felony; Count III, possession of cocaine while in possession of a firearm, a Class C felony; and Count IV, possession of a firearm by a serious violent felon, a Class B felony

*Woodson v. State*, No. 53A05-0604-CR-174, slip op. at 1-2 (Ind. Ct. App., Feb. 19, 2007), *trans. denied*.

Prior to trial, Woodson filed a motion to suppress the evidence seized from the rental car. On December 9, 2005, the trial court denied Woodson's motion to suppress. During the subsequent trial, Woodson's trial counsel did not renew any objection to evidence regarding the items seized from the rental car. On December 13, 2005, Woodson was convicted of Class C felony cocaine possession, Class C felony possession of cocaine while in possession of a firearm, and Class B felony possession of a firearm by a serious violent felon. The trial court sentenced Woodson to an aggregate sentence of twenty years of incarceration. On direct appeal, this court ordered Woodson's possession of cocaine while in possession of a firearm conviction vacated and affirmed in all other respects, leaving his aggregate sentence unaffected. *See Woodson*, No. 53A05-0604-CR-174, slip op. at 5.

On May 13, 2008, Woodson filed his *pro se* PCR petition. On February 10, 2011, Woodson filed his amended PCR petition. On August 24, 2011, the post-conviction court denied Woodson's PCR petition.

**DISCUSSION AND DECISION**

3

## *PCR Standard of Review*

Our standard for reviewing the denial of a PCR petition is well-settled:

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court.… Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

*Hall v. State*, 849 N.E.2d 466, 468, 469 (Ind. 2006) (internal citations and quotations omitted).

## Whether Woodson Received Effective Assistance of Trial Counsel

We review claims of ineffective assistance of counsel based upon the principles enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984):

> [A] claimant must demonstrate that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and that the deficient performance resulted in prejudice. Prejudice occurs when the defendant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability arises when there is a "probability sufficient to undermine confidence in the outcome."

*Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). Because an inability to satisfy either prong of this test is fatal to an ineffective assistance claim, this court need not even evaluate counsel's performance if the petitioner suffered no prejudice from that performance. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999).

4

Woodson contends that his trial counsel was ineffective for failing to object at trial to the admission of evidence related to the search of the rental car, thereby failing to preserve the issue for direct appeal. Woodson contends that (1) continued police detention and investigation beyond writing a traffic ticket violated Article I, Section 11 of the Indiana Constitution and (2) the record does not support a conclusion that he had apparent authority to consent to a search of the rental car, rendering the search improper under the Fourth Amendment to the United States Constitution. Woodson argues that raising these claims on appeal would have had a reasonable likelihood of success and that the failure to preserve them therefore prejudiced him.

## A. Whether Continued Detention and Investigation Violated Article I, Section 11

Woodson contends that Officer Harris's continued investigation of him and Onyeji violated Article I, Section 11, of the Indiana Constitution, which provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

The Indiana Supreme Court has noted that

> [w]hile almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001); *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind. 1999); *Moran v. State*, 644 N.E.2d 536, 540 (Ind. 1994). To determine whether a search or seizure violates the Indiana Constitution, courts must evaluate the "reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005) (citing *Moran*, 644 N.E.2d at 539). "We believe that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected

5

the subject of the search or seizure." *Id*. at 360. In *Litchfield*, we summarized this evaluation as follows:

> In sum, although we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs.

*Id*. at 361.

*Myers v. State*, 839 N.E.2d 1146, 1153 (Ind. 2005).

At the suppression hearing, Officer Harris testified regarding the traffic stop. According to Officer Harris, he was alone on patrol at approximately 11:30 p.m. when he pulled the rental car over. Upon receiving Onyeji's driver's license from him, Officer Harris observed Onyeji push aside a handgun when he reached for the registration. Onyeji had not previously warned Officer Harris of the presence of the handgun. At that point, Officer Harris pulled his weapon and ordered the duo to place their hands behind their heads while he called for backup, which arrived approximately four minutes later. After Woodson and Onyeji were removed from the car, Officer Harris verified with dispatch that the handgun in the glove compartment was not stolen, which took approximately three and one-half minutes. Officer Harris had by this point verified that Onyeji had a permit for the weapon.

Meanwhile, Officer Harris questioned Onyeji outside the car about where he had been and was told that the duo had driven to Gary, Indiana, and back that day. Onyeji, and soon thereafter Woodson, claimed that the purpose of the trip was to retrieve a copy

6

of Woodson's birth certificate and an identification card so that he could cash a check. Soon after learning that the handgun was not stolen, Officer Harris was informed by another police officer that the car was rented, even though Onyeji owned his own vehicle. At this point, Officer Harris failed to obtain Onyeji's consent to search the car before obtaining Woodson's. Officer Harris indicated that, in light of his training and experience, renting a car when one owns one and making a one-day round trip to another city were possible indicators of narcotics activity. At some point, Woodson also indicated that he had paid for the rental car in cash. Finally, Officer Harris observed that Onyeji was "somewhat nervous during the stop" and that "he was just acting nervous to [him]" even before the officer drew his weapon. Tr. pp. 42, 43.

Under the circumstances, Woodson has failed to establish that the police acted unreasonably in continuing the investigation to the point where they obtained consent to search the rental car. At all points of the encounter, police were justified in having at least a reasonably high degree of concern or suspicion that some sort of criminal activity might be occurring. After the traffic stop, Onyeji seemed nervous to Officer Harris, even before the officer drew his weapon. Perhaps most significantly, Onyeji's failure to inform Officer Harris of the handgun in the glove compartment, at the very least, could lead a reasonable officer to suspect that he intended to keep its presence concealed, perhaps because it was illegally possessed or to ensure continued access to it. Moreover, as we have recognized, "it is not uncommon for drug dealers to carry weapons." *Swanson v. State*, 730 N.E.2d 205, 211 (Ind. Ct. App. 2000), *trans. denied*. Officer

7

Harris's detention of the duo at gunpoint was fully justified, not only by officer safety concerns but by concerns regarding criminal activity.

Furthermore, what police learned after backup arrived only increased what was already a reasonable degree of suspicion that criminal activity might be afoot. Police learned that the car was rented even though Onyeji owned his own vehicle and that the duo had just returned from a one-day round trip to a relatively far-away city, both of which were, in Officer Harris's experience and pursuant to his training, indications of possible illegal narcotics activity. And, even though Officer Harris learned at some point that Onyeji's handgun was legally possessed and not stolen, there remained at least the possibility that Onyeji might have been concealing it to ensure access to it for use against the police. We conclude that the police had at least a reasonably high degree of concern or suspicion that some sort of criminal activity might be occurring.

The intrusion of the detention before consent was obtained into Woodson's and Onyeji's activities was minimal. The record indicates that the stop had lasted not much longer than seven and one-half minutes before Officer Harris obtained consent to search the rental car, most of which time was spent waiting for backup and for receiving information from dispatch regarding Onyeji's handgun. There was no invasive search of either Onyeji's or Woodson's person at any point.[1] The record also contains no indication that any personal effects of either occupant, such as luggage or other containers, were searched at any point. Neither Woodson nor Onyeji was handcuffed or

---

[1] The record indicates that Onyeji and Woodson were patted down "for safety purposes" after their removal from the rental car. Tr. p. 12.

8

otherwise restrained during the initial detention. We conclude that the seizure of Woodson and Onyeji prior to obtaining consent and the manner in which it was conducted were minimally intrusive.

Finally, we conclude that the needs of law enforcement were great. First, the obvious need to maintain officer safety was clearly implicated in this case. Officer Harris discovered very early on the presence of one deadly weapon and expressed the reasonable concern that "maybe, perhaps, they could have been armed with other weapons on their persons[.]" Tr. p. 11. As the stop progressed, and indications of illegal narcotics activity became apparent, the equally obvious need to deter, prevent, and punish drug trafficking was implicated. Given the reasonably high degree of suspicion of criminal activity, the minimally intrusive nature of police conduct prior to obtaining consent, and the great needs of law enforcement, Woodson has failed to establish that police detention of him until they obtained consent to search the rental car was unreasonable under Article I, Section 11. As such, Woodson has failed to carry his burden to establish that his trial counsel's failure to preserve the issue for appeal prejudiced him.

**B. Whether Woodson's Consent to Search was Valid Under the Fourth Amendment**

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized." "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966). "In *Wolf* [*v. People of State of Colorado*, 338 U.S. 25, 27 (1949) (overruled on other grounds by *Mapp v. Ohio*, 367 U.S. 643 (1961)] we recognized '(t)he security of one's privacy against arbitrary intrusion by the police' as being 'at the core of the Fourth Amendment' and 'basic to a free society.'" *Id.*

> The Fourth Amendment protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment. U.S. Const. amend. IV; *Mapp v. Ohio*, 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Warrantless searches and seizures inside the home are presumptively unreasonable. *See Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *See Berry v. State*, 704 N.E.2d 462, 465 (Ind. 1998) (citing *Brown v. State*, 691 N.E.2d 438, 443 (Ind.1998)). One well-recognized exception to the warrant requirement is a voluntary and knowing consent to search. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Stallings v. State*, 508 N.E.2d 550, 552 (Ind. 1987).

*Krise v. State*, 746 N.E.2d 957, 961 (Ind. 2001).

Woodson contends that his consent to the search of the rental car was invalid because he did not have actual or apparent authority to give such consent.

> It is well established that a third party may consent to the search of the premises or property of another if actual authority exists. Establishing actual authority requires a showing that there is a sufficient relationship to or "mutual use of the property by persons generally having joint access or control for most purposes." [*U.S. v.*] *Matlock*, 415 U.S. [164,] 171 & n.7, 94 S.Ct. 988 [(1974)]. *See also Caldwell v. State*, 583 N.E.2d 122, 125 (Ind. 1991). If actual authority cannot be shown, then facts demonstrating that the consenting party had apparent authority to consent could prove a lawful search. *See* [*Illinois v.*] *Rodriguez*, 497 U.S. [177,] 188-89, 110

10

S.Ct. 2793 [(1990)]. Under the apparent authority doctrine, a search is lawful if the facts available to the officer at the time would "'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises." *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). *See also Logan v. State*, 729 N.E.2d 125, 130 (Ind. 2000); *Canaan v. State*, 683 N.E.2d 227, 231-32 (Ind. 1997), *cert. denied*, 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998). The State bears the burden of proving that the third party possessed the authority to consent. *See Rodriguez*, 497 U.S. at 181, 110 S.Ct. 2793.

*Krise*, 746 N.E.2d at 967.

*Matlock*, *Rodriguez*, and their progeny, however, do not apply here for the simple reason that those cases, by their plain language, apply to third-party consent, and Woodson was not a third party. Moreover, to the extent that Woodson requests that we extend *Matlock* and *Rodriguez* to cover consent by second parties, we decline to do so. We cannot conclude that a defendant still has a reasonable expectation of privacy in a place or thing he himself has allowed to be searched, assuming, of course, that he ever had one. "An expectation of privacy gives rise to Fourth Amendment protection where the defendant had an actual or subjective expectation of privacy and the claimed expectation is one which society recognizes as reasonable." *Krise v. State*, 746 N.E.2d 957, 969 (Ind. 2001) (citing *Bond v. U.S.*, 529 U.S. 334, 338 (2000)). Put another way, without a reasonable expectation of privacy, there is no interest that is protected by the Fourth Amendment. Woodson has failed to establish that his consent was invalid, and has therefore not shown that he was prejudiced by his trial counsel's failure to preserve the claim that it was. Woodson has not established that he received ineffective assistance of trial counsel.

The judgment of the post-conviction court is affirmed.

11

VAIDIK, J., and CRONE, J., concur.