Paul M. MAST, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 50A03–0310–CR–422.

Court of Appeals of Indiana.

June 1, 2004.

Rehearing Denied July 26, 2004.

John S. Hosinski, South Bend, IN, Attorney for Appellant.

Steve ·Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Paul M. Mast brings this interlocutory appeal challenging the trial court's denial of his motion to suppress. Specifically, Mast argues that the police conducted an improper warrant-

less search of a dumpster containing garbage that had been located on his property, that the State improperly solicited and utilized the assistance of a private agent to effect the search, and that the probable cause affidavit for a search warrant that was ultimately issued was "deficient in its requirement for particularization of elements as to specific individuals or specific properties." Appellant's Br. p. 2. Concluding that the trial court properly denied Mast's motion to suppress, we affirm.

## FACTS

Sometime in May, 2002, Officer Les McFarland of the Marshall County Sheriff's Department had been working with a multi-city drug task force. At some point, Officer McFarland learned that the Mast brothers—who lived at the adjoining properties of 9415 and 9625 Elm Road near Bourbon in Marshall County, Indiana—were involved in illegal drug activities. Paul Mast lived at the 9625 residence while his brother, Lamar, resided at the 9415 property. Officer McFarland and Officer Bridget Strong drove to the properties and observed a commercial dumpster owned by Key Waste Services (Key Waste) situated at or near the property line that divided the two properties. The dumpster was located approximately fifteen to twenty feet from the road.

Officer McFarland revealed that he had conducted a prior investigation of the property in 1998. At that time, the property was designated 9415 Elm Road and there was only one residence and one barn located thereon. Since that time, Paul Mast's residence and a pole barn had been added. Officer McFarland then made inquiry with the local clerk's office and learned that the utilities of the two properties were separate and in each of the brother's names.

In furtherance of the investigation, Officer McFarland contacted the owner of Key Waste and was informed that the removal service account was in Lamar's name. He also discovered that the trash was picked up every other Wednesday and that the last regular pickup had occurred on May 8, 2002. Moreover, Officer McFarland learned that the account was delinquent and that Key Waste had planned to remove the dumpster from the property after making a final dump.

Officer McFarland then obtained permission from Key Waste to ride in the truck for the next trash removal from the Masts' dumpster. That removal was scheduled to occur on May 22, 2002. Prior to that day, Officer McFarland borrowed a Key Waste employee's uniform and met the driver of the dump truck at a nearby location. Officer McFarland then rode in the truck with the Key Waste employee where they planned to pick up the trash from the Masts' dumpster and unload it. When Officer McFarland and the employee arrived, the driver backed the truck to the dumpster, hooked the container, and dumped the contents into the holding receptacle. Officer McFarland remained in the truck during the entire process. The employee then drove the truck to a nearby church where Officer McFarland believed that another Key Waste dumpster was located. Other police officers met them in the church parking lot, whereupon they examined the garbage recovered from the Masts' dumpster and found that some of the trash bags were "sealed." Tr. p. 19–20. Upon opening the bags, the officers discovered that some of them contained marijuana stems and most all of the bags had "aluminum boats" in them, a device that is used to smoke methamphetamine. United States mail was also in the bags that had been addressed to either Paul or Lamar.

The police learned that on May 28, 2002, a theft of anhydrous ammonia occurred in the southern part of Marshall County. A lead in that case indicated that the stolen chemical had been delivered to the Masts' Elm Road property. As a result, Officer McFarland obtained search warrants for both properties and executed the warrants on May 29, 2002. The return on the warrant as to Paul's residence indicated that the police seized plastic bags containing "pink rock-like substance[s], white powder, a quantity of suspected marijuana including stems and seeds and other drug paraphernalia." Appellant's App. p. 30–33. The following day, Mast was charged with Dealing in Methamphetamine,[1] a class A felony, Possession of Methamphetamine,[2] a class C felony, Possession of Marijuana,[3] a class A misdemeanor and Maintaining a Common Nuisance,[4] a class D felony.

Thereafter, Mast filed a motion to suppress on July 23, 2003, alleging that under Article 1, Section 11 of the Indiana Constitution, the intrusion onto his private property for purposes of conducting a search of the dumpster was improper and, therefore, the evidence should not be admitted at trial. Mast also challenged the validity and execution of the search warrant on his property, alleging that the facts set forth in the probable cause affidavit did not support the issuance of a warrant. Following a hearing, the trial court granted Mast's motion to suppress for the reason that the search warrant that had been issued only authorized the police to enter Lamar's residence and, therefore, the entry into Paul's property was improper. The order noted, however, that the search of the dumpster on May 22, 2002 was valid.

On August 22, 2003, the State filed a motion to reconsider the trial court's earlier grant of the motion to suppress. The State pointed out that a search warrant had in fact been issued for Paul's property, but it had not been filed with the court before it was executed. Following a hearing, the trial court granted the State's motion to reconsider. The trial court explained that it initially granted the motion to suppress based upon the erroneous belief that only one warrant had been issued for a search of Lamar Mast's residence, and that warrant did not authorize a search of Paul's house. Upon learning that a warrant had in fact been issued for a search of Paul's residence, the trial court changed its ruling and denied the motion to suppress. Thereafter, Mast filed a petition for interlocutory appeal, and we accepted jurisdiction pursuant to Indiana Appellate Rule 14(B).

## DISCUSSION AND DECISION

### I. Standard of Review

In reviewing the decision denying a motion to suppress, we first note that the trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *Goodner v. State*, 714 N.E.2d 638, 641 (Ind.1999). Additionally, a trial court's decision to deny a motion to suppress is reviewed in the same fashion as we review sufficiency of the evidence claims. *Edwards v. State*, 759 N.E.2d 626, 630 (Ind. 2001). That is, we will consider the evidence most favorable to the judgment of the trial court and will neither reweigh the evidence nor judge the credibility of wit-

---

1. Ind Code § 35–48–4–1(a)(2); I.C. § 35–48–4–1(b)(1).

2. I.C. § 35–48–4–6(a); I.C. § 35–48–4–6(b)(1)(A).

3. I.C. § 35–48–4–11(1).

4. I.C. § 35–48–4–13(b)(1).

nesses. *Id.* If there is sufficient evidence of probative value to support the denial of the motion to suppress, the trial court's decision will be upheld. *Taylor v. State,* 689 N.E.2d 699, 702 (Ind.1997).

■ With respect to Fourth Amendment claims, the State bears the burden to prove the reasonableness of a warrantless search. *Roehling v. State,* 776 N.E.2d 961, 963 (Ind.Ct.App.2002), *trans. denied.* We have recognized that the purpose of the Fourth Amendment to the United States Constitution is to protect the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures. *Barfield v. State,* 776 N.E.2d 404, 406 (Ind.Ct.App.2002). Additionally, in order to invoke the protection of the Fourth Amendment, a person must have a reasonable expectation of privacy in the place searched. *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The United States Supreme Court has held that the warrantless search and seizure of garbage bags left outside a defendant's house violates the Fourth Amendment only if the individual manifested a subjective expectation of privacy in his or her garbage that society accepts as objectively reasonable. *California v. Greenwood,* 486 U.S. 35, 38, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).

■ In addition to analyzing warrantless searches under the Fourth Amendment to the United States Constitution, we note that Mast has challenged the propriety of the search under Article I, Section 11 of the Indiana Constitution. While the United States Constitution establishes a minimum level of protection to citizens of all states, a state is free as a matter of its own constitutional law to impose greater restrictions on police activity than those deemed minimal under federal law. *See State v. Stamper,* 788 N.E.2d 862, 864 (Ind.Ct.App.2003), *trans. denied* (citing

*Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975)).

■ The Indiana Constitution has unique vitality, even where its words parallel federal language. *State v. Gerschoffer,* 763 N.E.2d 960, 965 (Ind.2002). We resolve Indiana constitutional claims by "examining the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." *Id.,* (quoting *Indiana Gaming Comm'n v. Moseley,* 643 N.E.2d 296, 298 (Ind.1994)). Moreover, it has been held that Article I, Section 11 must be liberally construed to protect Hoosiers from unreasonable police activity in private areas of their lives. *Id.* (quoting *Brown v. State,* 653 N.E.2d 77 (Ind.1995)). Rather than looking to federal requirements such as warrants and probable cause when evaluating Section 11 claims, we place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable. *Id.*

## II. Mast's Contentions

### A. Trespass Onto the Property

■ Moving to the specifics of this case, Mast claims that his motion to suppress should have been granted because the intrusion onto his property by Officer McFarland to seize the dumpster and the trash therein was unreasonable. Specifically, Mast challenges the propriety of the search because the police "entered through a distance and route that was well upon the private property of the Defendant, where such access to the dumpster involved could have only otherwise been accessed by the privately contracted hauling service." Appellant's Br. p. 9.

In support of his argument, Mast directs us to this court's opinion in *Stamper,* where we observed that in other cases

involving the review of a police search of garbage prior to obtaining a search warrant, the act of "coming onto the property was the benchmark" and that as "long as the police did not have to enter the property, the search was considered reasonable." 788 N.E.2d at 865–66. The circumstances in *Stamper* were such that the police officers stepped onto the defendant's property to retrieve a garbage bag. *Id.* at 866. We concluded that the defendant's expectation of privacy in bags on his property was reasonable and that the seizure of the bags was improper primarily because of the "trespass" by the seizing officers. *Id.* at 867.

In contrast, the evidence in this case showed that Key Waste routinely emptied the dumpster on the Masts' property in accordance with a particular schedule. To be sure, the record demonstrates that the collection service emptied the dumpster on May 8, 2002, and again on May 22, 2002. Thus, Mast would have known that any trash placed in that dumpster would be removed by someone other than himself or his brother.

In our view, the circumstances here are more similar to those that were presented in *Moran v. State,* 644 N.E.2d 536 (Ind. 1994). In *Moran,* our supreme court upheld the search and seizure of garbage left at the curb in front of the defendant's house. The court observed that the police conducted themselves in the same manner as those who pick up the garbage, the police did not disturb Moran or his neighborhood, and the police did not trespass onto Moran's property. *Id.* at 541. Thus, it was determined that the search was not unreasonable. *Id.* Also, in *Bell v. State,* 626 N.E.2d 570 (Ind.Ct.App.1993), *trans. denied,* we upheld a search of the defendant's garbage where he placed the trash outside of the fenced-in area of his property and the police seized it without stepping

onto his land. Specifically, we observed that

> Bell placed the garbage bags in question outside the fenced-in area of his property where they could be reached from the alley without stepping onto Bell's property. *They appeared to be available for waste disposal pick-up.* We hold that Bell had no reasonable expectation of privacy in the contents of the garbage bags and we find no error in the trial court's denial of Bell's motion to suppress.

*Id.* at 572 (emphasis added).

Following the lead of *Moran* and *Bell,* we observe here that commercial trash collectors have contractual obligations to remove garbage from various landowners. Naturally, in order to meet that obligation, entry by Key Waste onto the Masts' property was essential. The dumpster was located about twenty feet from the road, and such placement prohibits the contractual removal of the trash without someone crossing onto the property line, driving a truck to the dumpster, attaching the dumpster to the dump truck, and emptying the contents of the dumpster into the truck. Thus, the garbage service employee's entry onto the property was made in accordance with the contracted-for service.

Similarly, we find Officer McFarland's presence in the cab of the dump truck as it backed onto the property to the dumpster of no consequence. As indicated in the *FACTS,* Officer McFarland never left the truck, and he never set foot onto Mast's property. Rather, the record shows that Officer McFarland accompanied the dump truck driver on several scheduled stops, including the pick up from the dumpster that was on the Masts' property. Again, as the *Moran,* court observed, the police officer in that case did nothing that the collection agency was not authorized to do. We have the same cir-

cumstances here, and, as a result, Mast's argument that Officer McFarland's presence in the truck constituted a trespass onto the property in violation of Article I, Section 11 of the Indiana Constitution must fail. Thus, the trial court did not err in denying Mast's motion to suppress on this basis.[5]

### B. Validity of the Search Warrant

▮ Notwithstanding our conclusion that the search of Mast's trash bags was not unreasonable, Mast goes on to argue that his motion to suppress should have been granted because the probable cause affidavit submitted to the trial court for the issuance of the search warrant was deficient. In essence, Mast alleges that the evidence presented for the issuance of the warrant only set forth non-particularized references to him inasmuch as circumstances regarding the seizure of trash belonging to his brother were also included in the probable cause affidavit. Therefore, he claims that the search warrant was invalid.

▮ In reviewing this claim, we focus on whether a "substantial basis" existed for a warrant authorizing the search or seizure, and doubtful cases are to be resolved in favor of upholding the validity of the warrant. *State v. Haines*, 774 N.E.2d 984, 990 (Ind.Ct.App.2002), *trans. denied.* This court reviews the trial court's substantial basis determination under a de novo standard of review. *Houser v. State*, 678 N.E.2d 95, 98 (Ind.1997). Additionally, we note that the task of the issuing magistrate in deciding whether to issue a

search warrant is to make a practical, common sense determination whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Query v. State*, 745 N.E.2d 769, 771 (Ind.2001). Both the trial court and this court give significant deference to the probable cause determination of the magistrate who initially issued the warrant. *Houser*, 678 N.E.2d at 99.

In this case, the facts set forth in the affidavit for probable cause indicate that Officer McFarland had received information from a cooperative citizen that she had been on the Mast property and had observed that there was a methamphetamine lab in a garage. Appellant's App. p. 9. She further advised that both Paul and Lamar were involved in the manufacture and dealing of this drug. Also contained in the probable cause affidavit was information that Officer McFarland had learned that the Mast brothers lived at adjoining properties and had been convicted of prior drug charges. Appellant's App. p. 9–10. Officer McFarland informed the magistrate of the trash pickup incident, and specifically noted that one of the trash bags with papers bearing Paul Mast's address contained "rolling paper wrappers, marijuana stems and the burnt portion of a partial marijuana cigarette." Appellant's App. p. 10.

Contrary to Mast's argument, the information set forth above specifically pertained to him. Thus, it is apparent to us

---

5. Inasmuch as we have concluded that the acts of emptying the dumpster and the subsequent search of the garbage bags were proper because there was no intrusive conduct, we need not address Mast's related claim that the police were unlawfully using Key Waste personnel as its agent. To be sure, it was established that the purpose of the Key Waste

employee's entry onto the property had nothing to do with Officer McFarland or any governmental agency. Thus, it cannot be said that the trash service was acting as an "instrument or agent" of the State, and the Fourth Amendment was not implicated in light of the trash collection business.

that such evidence standing alone established the necessary "substantial basis" for the issuance of a warrant authorizing a search of Mast's residence for contraband consistent with drug manufacturing as well as the use and dealing of those drugs. Moreover, although Officer McFarland included other information relating to Lamar Mast's involvement in drug manufacturing and use in the affidavit, such does not negate the specific evidence of drugs and drug usage that was found in the trash bag containing only Paul Mast's mail. As a result, we conclude that the issuance of the search warrant was proper, and we reject Mast's argument that the search warrant was invalid.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.