STATE of Indiana, Appellant–Plaintiff,

v.

Alicia A. NEANOVER, Appellee–
Defendant.

No. 24A01–0402–CR–83.

Court of Appeals of Indiana.

July 20, 2004.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Clay M. Kellerman, Batesville, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

The State appeals the trial court's grant of a Motion to Suppress Evidence. Because we find that the officers' warrantless search and seizure of garbage from an open landing on the top floor of an apartment building violated both the federal and state constitutions, the trial court's ruling was not contrary to law. We therefore affirm.

### Facts and Procedural History

Alicia Neanover lived with her husband, Dave, in one of two apartments located on the top floor of a three-story apartment building. Immediately outside the door to their apartment was an open landing, which they used for recreation and storage. There was a patio table and chairs on the landing, where they would sit some evenings, and they had hung up a clothesline that zigzagged between the railings. They also used the landing area for storage. For various reasons, Neanover would sometimes place full garbage bags on the landing: to get them out of the way while she was cleaning inside the apartment, for storage, or to make it more convenient for her husband to take the bags downstairs for garbage collection.[1] The Neanovers left their garbage for collection by the municipal trash service in an area enclosed by a white picket fence that was located across the apartment building's parking lot.

In response to a complaint from a concerned citizen, who claimed to have seen marijuana growing inside Neanover's apartment, Deputies Adam Henson and Dusty Hill went to the apartment to investigate. When the officers arrived at the apartment, they observed garbage bags on the landing. The officers knocked on Neanover's door but received no response. The officers then picked up Neanover's garbage and took it with them to the Sheriff's Department. After rifling through the garbage and, presumably, finding evidence of marijuana use, they obtained and executed a warrant for the apartment.

---

1. At the suppression hearing, the following testimony was elicited from Neanover:

   Q: So, would you put things on the landing for the purpose of abandoning them?

   [Neanover]: Oh, no, like, uh, garbage. When we took out the garbage, like when I was sweeping or cleaning or whatever I would set it in that landing in that stairwell or in that walkway.

   Q: Between the railings?

   [Neanover]: Yeah between the railings. I would set it there, just because it was like out of the way and like it would be out of his way and it was like, I would sweep the floor and then I would (inaudible) and then.... Generally like I set it there for Dave to take down.

   * * * * *

   Q: Okay, so when you would put things on the landing it was not for the purpose of somebody to pick them up?

   [Neanover]: Right, they were still ours, in fact, I had like six bags of (inaudible) one time that sat there for, from February until May. My landlord didn't take them down because they were mine, so....

   Tr. p. 9–10.

Shortly thereafter, the State charged Neanover with cultivating marijuana and possession of marijuana, both Class A misdemeanors. Neanover filed a motion to suppress the evidence related to the marijuana charges "for the reason that [Neanover's] garbage bags were illegally seized." Appellant's App. p. 10. After a suppression hearing, the trial court granted the motion—without providing findings of fact or conclusions of law—and the State dismissed the charges. The State now appeals.

## Discussion and Decision

■■■ The circumstances of this case—garbage seized without a warrant from the open landing of an apartment building, where it had not been abandoned for collection and was not readily accessible to the public—present a question of first impression in Indiana. The State contends that the warrantless search and seizure of Neanover's garbage from the open landing of her apartment building was constitutionally permissible under both the Fourth Amendment to the United States Constitution and Article I, § 11 of the Indiana Constitution. At the suppression hearing, the State had the burden of establishing the constitutionality of the measures it used to secure evidence. *State v. Stamper*, 788 N.E.2d 862, 864 (Ind.Ct.App.2003), *trans. denied.* When appealing the grant of a motion to suppress, the State is appealing from a negative judgment and must show that the trial court's ruling on the suppression motion was contrary to law. *Id.* This Court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* We neither reweigh the evidence nor judge the credibility of witnesses; rather, we consider only the evidence most favorable to the judgment. *Id.*

## A. Fourth Amendment

■■■ The purpose of the Fourth Amendment to the United States Constitution is to protect the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures. *Mast v. State*, 809 N.E.2d 415, 419 (Ind.Ct.App. 2004). To determine whether the warrantless search and seizure of a person's garbage violates her Fourth Amendment rights, we must determine whether the person manifested a subjective expectation of privacy in the garbage bag that society accepts as objectively reasonable. *California v. Greenwood*, 486 U.S. 35, 39–40, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) ("An expectation of privacy does not give rise to Fourth Amendment protection, however, unless society is prepared to accept that expectation as objectively reasonable.").

The State argues that Neanover had neither a subjective expectation of privacy, since she admitted that she placed the garbage outside the door in order for her husband to carry it downstairs and across the parking lot to the designated collection area, nor an objectively reasonable expectation of privacy, since the garbage was placed in "an area she did not control and from which she could exclude no one." Appellee's Br. p. 6. The State contends that there is no distinction between placing one's garbage on the curb outside one's house for collection and placing one's garbage on the landing outside one's apartment door.

But there is an important distinction between the two sites. Garbage is unique in that, in most instances, a person places her garbage in a specific, designated location for the express purpose of having someone else take it away. Thus, when a person has placed her garbage in the location from which her trash collection service routinely collects it—be it a curb, a dump-

ster, or a fenced-in area some distance from her apartment building, as was the case here—that person has manifested the intent to abandon the garbage and her expectation of privacy with respect to it. *See Stamper,* 788 N.E.2d at 864 ("Placing items of property inside a garbage bag and placing the garbage bag out for collection manifests an intention to abandon the property inside the garbage bag."). If, however, the garbage bag is seized from somewhere other than that designated collection area, then the question of whether the garbage was in a place where the person had a subjective expectation of privacy that society would accept as objectively reasonable becomes considerably more difficult.

■ The undisputed evidence shows that Neanover did manifest a subjective expectation of privacy in the landing area. She testified that she used the area for recreation and storage, having placed a patio table and chairs and various other items that she did not intend to abandon on the landing. While her testimony is unclear as to whether she had placed the garbage on the landing for "storage," as she claims in her brief, or merely as a temporary measure until her husband could take it out to the collection area, the evidence shows that Neanover had a subjective expectation of privacy insofar as she treated the landing area outside her apartment door as a combination patio/storage space, a zone of privacy akin to curtilage.[2]

The more significant and difficult issue is whether her expectation of privacy was objectively reasonable. We conclude that it was. Although the third-floor landing was open and accessible to the general public, the landing was not *readily* accessible. *See United States v. Hedrick,* 922 F.2d 396, 399 (7th Cir.1991) ("[T]he relevant inquiry is whether the garbage cans were so readily accessible to the public that they exposed the contents to the public for Fourth Amendment purposes."). Judge Coffey explains the "readily accessible" calculus:

> When determining whether trash is readily accessible, courts must ensure that the term "readily" maintains substantive force. "Readily" does not mean "possibly," and trash is not *readily* accessible just because it is visible to passers-by on the street or vulnerable to scavenging expeditions of various enterprising animals and people. Courts must consider all aspects of the search in assessing whether trash was indeed *readily* accessible. Within this calculus, important factors include the proximity of the garbage to the defendant's home, the garbage's distance from any public thoroughfare, the ease with which the public could reach the garbage without disturbing the intimate activities of the defendant's home life, and the unique societal message of abandonment that attaches to trash as opposed to other objects located on the defendant's prop-

2. "A home's 'curtilage' is the area outside the home itself but so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part of the home." *United States v. Pace,* 898 F.2d 1218, 1228 (7th Cir.1990). We have not engaged in "curtilage" analysis in this opinion primarily because to determine whether the garbage was within or without the curtilage merely restates the ultimate Fourth Amendment standard of the reasonableness of a persons expectation of privacy in a given area. "[C]urtilage is a descriptive—rather than a prescriptive—term in our Fourth Amendment jurisprudence. Curtilage cannot define a defendants reasonable expectation of privacy when the very same reasonable expectation is the basis for defining curtilage in the first place." *United States v. Redmon,* 138 F.3d 1109, 1124–25 (Coffey, J., concurring).

erty. This non-exhaustive list illustrates that the ready accessibility test essentially reformulates the totality-of-circumstances reasonableness standard itself.

*United States v. Redmon,* 138 F.3d 1109, 1124 n. 3 (Coffey, J., concurring).

Neanover's garbage was located just outside the door of her apartment—one of only two apartments on the top floor of a three-story apartment building, hardly a high-traffic area—and in an area Neanover treated as a combination patio/storage area. Thus, although the garbage was seized from an open landing that was accessible to virtually anyone who cared to climb the three flights of stairs to gain access to it, it is unlikely that many people would feel so motivated unless they were visiting one of the two apartments located on that level. Moreover, it is undisputed that the garbage had not been "abandoned" in the designated trash collection area. *See id.* at 1114 (holding that defendant did not have a reasonable expectation of privacy in garbage that was "abandoned" and readily accessible to the public). Given these facts, we cannot say that Neanover's expectation of privacy was unreasonable. We conclude that the warrantless search and seizure of Neanover's garbage violated her Fourth Amendment rights.

## B. Article I, § 11 of the Indiana Constitution

Moreover, we find that the search and seizure also violated Neanover's rights under the Indiana Constitution. Our supreme court determined in *Moran v. State* that the purpose of Article I, § 11 of the Indiana Constitution—which "must receive a liberal construction in its application"—is to protect from unreasonable police activity those areas of life Indiana citizens regard as private. *Moran,* 644 N.E.2d 536, 540 (Ind.1994), *reh'g denied.* The *Moran*

court explicitly rejected the federal approach and introduced a state constitutional test, which places the burden on the State to show that under the totality of the circumstances its intrusion was reasonable. *Id.* at 540–41; *Litchfield v. State,* 808 N.E.2d 713, 716 (Ind.Ct.App.2004), *trans. pending; see Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) (noting that a state is free as a matter of its own state constitutional law to impose greater restrictions on police activity than those held to be necessary according to federal constitutional standards). In *Moran,* the court applied this standard and found that it was not unreasonable for the police, acting without a warrant, to seize garbage that had been set on the curb about a foot from the street in anticipation of the trash pickup scheduled for that day. *Moran,* 644 N.E.2d at 538. The court found it significant that the police collected the garbage early in the morning—"when their actions were unlikely to be seen in the neighborhood and commented about"—and did not trespass upon the premises in order to do so. *Id.* at 541.

Following *Moran,* this Court in *State v. Stamper* found that entry onto the property was the pivotal factor in determining the reasonableness of a warrantless seizure of garbage. In *Stamper,* we affirmed the trial court's grant of a motion to suppress evidence obtained from garbage "some feet on [Stamper's] property near the end of the driveway" where the police officer trespassed onto Stamper's property in order to seize the garbage and where Stamper testified that his "sister's fiancé collected his garbage rather than any government-run garbage collection service." *Id.* at 863. The *Stamper* court concluded that under these circumstances and "absent exigent circumstances, the police will

need a search warrant based on probable cause." *Id.* at 867.

A different panel of this Court, in *Litchfield v. State,* declined to follow *Stamper* to the extent that that case appeared to set forth a bright-line rule for determining reasonableness, i.e., the entry onto private property. *Litchfield,* 808 N.E.2d at 716. Instead, the Court considered the reasonableness of the warrantless search of Litchfield's trash under the totality of the circumstances—the police officer trespassed onto the Litchfield's property in order to seize the trash, which was located more than fifty yards away from the residence in an unfenced area of the front yard, but did so "in a manner consistent with the Litchfields' regular trash collection service and at times [of the day] that would not bring [the] police activities to the neighbors' attention"—and affirmed the trial court's denial of Litchfield's motion to suppress. *Id.*

In our most recent decision in this area, this Court found that it was not unreasonable for a police officer to don a trash removal service employee's uniform and to ride along but remain inside the garbage truck when the trash removal service performed its regularly-scheduled pick-up of the garbage left in a commercial dumpster located on Mast's property. *Mast,* 809 N.E.2d at 417. The Court stated that although Mast's dumpster was located on his property, "[the officer] never left the truck, and he never set foot onto Mast's property.... [A]s the *Moran* court observed, the police officer in that case did nothing that the collection agency was not authorized to do. We have the same circumstances here...." *Id.* at 420.

Although the "reasonableness under the totality of the circumstances" standard necessarily requires a fact-specific determination, we can glean a few general principles from the caselaw discussed above.

First, a police officer's warrantless seizure of garbage is generally held to be reasonable under the totality of the circumstances if the garbage has been left in the place where the regular trash service would routinely collect it, particularly if the officer seizes it in a manner consistent with the regular trash collection service, i.e., early in the morning and without attracting the attention of neighbors. Second, while Indiana courts generally do not applaud the practice of trespassing onto private property in order to seize garbage, in both *Litchfield* and *Mast* this Court rejected entry onto private property as a bright-line rule, looking instead to the totality of the circumstances to determine reasonableness. Finally, in the absence of exigent circumstances, a police officer would be well advised to obtain a warrant before snatching the garbage of an Indiana citizen. *Stamper,* 788 N.E.2d at 867.

We conclude that the search and seizure violated Neanover's rights under the Indiana Constitution because it was not reasonable under the totality of the circumstances. Again, the seized garbage had not been abandoned in the designated trash collection area—this fact alone distinguishes this case from prior Indiana caselaw involving the warrantless search and seizure of garbage. This factor also tells us that the officers who seized the garbage did not do so in a manner consistent with the trash collection service. *See Litchfield,* 808 N.E.2d at 716. Indeed, by walking up to the landing empty-handed and coming back down with Neanover's garbage, the officers did something even the trash collection service was not authorized to do. *See Mast,* 809 N.E.2d at 417. And although any discussion of entry onto "property," *see Stamper,* 788 N.E.2d at 863, is somewhat inapposite given that Neanover was merely renting her apartment, we can infer, given the facts, that her

lease permitted her to use the landing outside her apartment for personal recreation and storage. Thus, it can be said that the officers were stepping into an area where Neanover manifested an expectation of privacy akin to what a homeowner feels in his house and curtilage, a zone of privacy. Given the totality of the circumstances—including the apparent lack of exigent circumstances—and the supreme court's pronouncement that Article I, § 11 "must receive a liberal construction in its application," *see Moran,* 644 N.E.2d at 540, it was unreasonable and violative of the Indiana Constitution for the officers to seize Neanover's garbage from her landing. Having found that the search and seizure offended both the federal and state constitutions, we cannot say the trial court's grant of Neanover's motion to suppress was contrary to law.

Affirmed.

SULLIVAN, J., and MAY, J., concur.