Darius BOWLES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0402–CR–107.

Court of Appeals of Indiana.

Jan. 14, 2005.

Transfer Denied March 31, 2005.

David R. Hennessy, Indianapolis, IN, Attorney For Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys For Appellee.

## OPINION

MATHIAS, Judge.

Darius Bowles ("Bowles") is charged with Class A felony dealing in cocaine, Class C felony possession of cocaine, Class C felony possession of cocaine and a firearm, Class D felony possession of a controlled substance, and Class A misdemeanor possession of marijuana in Marion Superior Court. He filed motions to suppress all evidence seized as a result of a search of his trash, and the subsequent search of his residence. The trial court denied his motions and he has filed this interlocutory appeal raising three issues, which we reorder and restate as:

I. Whether Bowles' trash was searched and seized in violation of Article One, Section Eleven of the Indiana Constitution;

II. Whether the search warrant for Bowles' residence is invalid because the police officer failed to file a probable cause affidavit with the magistrate before the search warrant issued; and

III. Whether the items found in Bowles' trash were sufficient to establish probable cause to issue a search warrant of his residence.

Concluding that the search and seizure of Bowles' trash was constitutional, and that the search warrant was valid and supported by probable cause, we affirm.

### Facts and Procedural History

Prior to March 4, 2003, Indianapolis Police Detective Garth Schwomeyer ("Detective Schwomeyer") received information that Bowles was dealing cocaine from his residence, a condominium. On March 4, 2003, Detective Schwomeyer proceeded to

Bowles' residence and observed that trash had been set out for collection. The trash was situated next to a common mailbox for the condominiums in the area and the mailbox was located near the end of Bowles' driveway. Detective Schwomeyer retrieved two trash bags from the trash cans.

Inside the bags, Detective Schwomeyer found marijuana seeds and stems, numerous plastic baggies with corners torn off, approximately twenty-five baggies that had been ripped open and contained a powdery cocaine residue, a piece of mail bearing Bowles' address, and a sales receipt bearing Bowles' name. Detective Schwomeyer believed that the baggies with the torn corners were consistent with the practice of packaging drugs for sale by using a corner of the baggie and discarding the remainder. Moreover, he believed that the discarded baggies with cocaine residue were consistent with the practice of purchasing powder cocaine and cooking it into crack cocaine.

On March 5, 2003, Detective Schwomeyer obtained a search warrant for Bowles' residence, however he did not leave a copy of the probable cause affidavit with the issuing magistrate and did not file it with the Marion County Clerk until March 6, 2003. The search of Bowles' residence was conducted on March 5th and officers found items including cocaine, marijuana, alprazolam, a glock 23 semi-automatic weapon, and a shotgun.

On March 6, 2003, Bowles was charged with Class A felony dealing in cocaine, Class C felony possession of cocaine, Class C felony possession of cocaine and a firearm, Class D felony possession of a controlled substance, and Class A misdemeanor possession of marijuana. On July 29, 2003, Bowles filed a motion to suppress the evidence seized as a result of the search of his residence, and on August 7, 2003, he filed a motion to suppress all evidence seized as a result of the trash search. His motions were denied on December 15, 2003. After his motion to reconsider was denied, Bowles moved to certify the trial court's order for interlocutory appeal, which the trial court granted. Our court accepted jurisdiction of this interlocutory appeal on March 29, 2004. Additional facts will be provided as necessary.

## I. Trash Search

Bowles argues that his trash was searched and seized in violation of Article One, Section Eleven of the Indiana Constitution, and therefore, the trial court abused its discretion when it denied his motion to suppress. The trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *Goodner v. State,* 714 N.E.2d 638, 641 (Ind.1999). Additionally, a trial court's decision to deny a motion to suppress is reviewed in the same fashion as we review sufficiency of the evidence claims. *Edwards v. State,* 759 N.E.2d 626, 630 (Ind.2001). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *McClure v. State,* 803 N.E.2d 210, 212–13 (Ind.Ct.App.2004), *trans. denied.* However, we must also consider any uncontested evidence favorable to the defendant. *Id.*

Article One, Section Eleven of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Article One, Section Eleven "must be liberally construed to protect Hoosiers from unreasonable police activity in private areas of their lives." *State v. Gerschoffer*, 763 N.E.2d 960, 965 (Ind.2002) (citing *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995)). "Rather than looking to federal requirements such as warrants and probable cause when evaluating Section Eleven claims, we place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable." *Id.* (citing *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind.1999)).

In *Moran v. State*, 644 N.E.2d 536, 541 (Ind.1994), our supreme court determined that the reasonableness of trash searches should be determined based on a totality of the circumstances. However, the court also recognized that "Hoosiers are not entirely comfortable with the idea of police officers casually rummaging through trash left at curbside." *Id.* Nevertheless, the court held that the search and seizure of the trash left at the curb in front of Moran's residence was reasonable. *Id.* The court observed that the police officers conducted themselves in the same manner as those who pick up the trash, that the officers did not disturb Moran or his neighbors, and that the officers did not trespass onto Moran's property. *Id.*

Our court reached the opposite result in *State v. Stamper*, 788 N.E.2d 862 (Ind.Ct. App.2003), *trans. denied*. In that case, an Indiana State Police Detective was conducting surveillance of Stamper's residence when he observed Stamper exit his residence with a garbage bag in his hand. *Id.* at 864. Stamper placed the garbage bag at the bottom of a garbage pile on his property near the end of his driveway. *Id.* A "No Trespassing" sign was posted on his property near the garbage pile. *Id.* Two hours later, the detective removed the garbage bag that Stamper placed at the bottom of the pile. To do so, the detective was required to enter Stamper's property because the garbage bag was located approximately ten feet from the street. *Id.* Our court also noted that Stamper's sister's fiancé collected Stamper's garbage rather than a government-run collection service. *Id.*

Under such circumstances, our court determined that the search and seizure of Stamper's trash was unreasonable under Article One, Section Eleven because the detective trespassed on his property to retrieve the bag, which would not have been collected by a public trash collection service. *Id.* at 865. In reaching that conclusion, our court observed, "our supreme court and this court have held that coming onto the property was the benchmark. As long as the police did not have to enter the property, the search was considered reasonable." *Id.* at 865–66 (citing *Moran*, 644 N.E.2d at 541; *Bell v. State*, 626 N.E.2d 570, 572 (Ind.Ct.App.1993), *trans. denied*). We also rejected the State's argument that Stamper had no reasonable expectation of privacy in the garbage bag. *Id.* at 866 ("[W]e believe Stamper's expectation of privacy was reasonable. If we were to hold otherwise, police could search everyone's opaque garbage bags on their property without reason and thereby learn of their activities, associations, and beliefs.").[1]

---

1. In *Litchfield v. State*, 808 N.E.2d 713, 716 (Ind.Ct.App.2004), *trans. granted*, after observing that in *Stamper* our court appeared to rely almost entirely on the fact that the officer trespassed onto the defendant's property in determining that the search and seizure was unreasonable, a different panel of our court declined "to follow *Stamper* to the extent that *Stamper* appears to have created a bright-line test for determining reasonableness." In *Litchfield*, our court determined that the search and seizure was reasonable under the totality of the circumstances even though the officer trespassed onto the defendant's prop-

More recently, in *Lovell v. State*, 813 N.E.2d 393, 398 (Ind.Ct.App.2004), *trans. denied*, our court held that the search of the defendant's garbage bags was reasonable under the totality of the circumstances. In that case, when police officers arrived at Lovell's residence, they saw three garbage bags situated next to Lovell's mailbox. *Id.* Also, the officers observed that many of the residences nearby had trash next to their mailboxes. *Id.* The officers seized Lovell's garbage bags in a manner consistent with those whose duty it was to pick up the garbage bags for collection. *Id.* Moreover, there was no indication in the record that the officers trespassed on Lovell's property when they seized the garbage bags or that they disturbed her neighbors. *Id.*[2]

In this case, after discovering that trash was scheduled for collection on March 4, 2003 at Bowles' residence, Detective Schwomeyer proceeded to Bowles' residence on that date. When he arrived at Bowles' residence, a condominium Bowles rented, he observed that trash had been set out for collection. Tr. p. 8. The trash was situated next to a common mailbox for the condominiums in the area and the mailbox was located near the end of Bowles' driveway. Ex. Vol., State's Ex. 1 and 2. At the hearing on the motion to suppress, Detective Schwomeyer testified that he walked up to the mailbox as if he were checking his mail and picked up Bowles' trash without leaving the common area where the mailbox was situated. Tr. p. 13. However, the photographs taken on March 4, 2003, before Bowles' trash was seized reveal that there was a significant amount of snow on the ground, and therefore, as the trial court noted in its order denying the motion to suppress, "it would be impossible for [Detective Schwomeyer] to know for sure whether he" actually stepped onto the property rented by Bowles when he seized the trash.[3] Appellant's App. p. 31.

The photographs taken of Bowles' trash before it was seized demonstrate that the

erty because he seized the trash bags in a manner consistent with the defendant's regular trash collection service at times when the officer's activity would not disturb the defendant's neighbors. *Id.*

2. In *Mast v. State*, 809 N.E.2d 415, 421 (Ind. Ct.App.2004), *trans. pending*, our court also held that the search and seizure of the defendant's trash was reasonable. In *Mast*, the police officer obtained permission from Mast's trash collection service to ride in the truck for the next trash removal from Mast's dumpster. *Id.* at 417. The trash collection service collected Mast's trash and the officer remained in the truck during the entire process. The collection service employee then drove to a nearby church where police officers recovered Mast's trash and searched it. *Id.* Observing that the officer did nothing that the collection agency was not authorized to do, our court rejected Mast's argument that the officer's presence in the truck constituted a trespass onto his property in violation of Article One, Section Eleven of the Indiana Constitution. *Id.* at 420–21. In contrast, in the recent case of *State v. Neanover*, 812 N.E.2d 127, 132 (Ind.Ct.App.2004), our court determined that the search and seizure of the defendant's trash violated her rights under Section Eleven because it was not reasonable under the totality of the circumstances. Neanover's trash, which was located on the landing outside the door to her third floor apartment, had not been abandoned in the designated trash collection area, and therefore, the officers who seized the trash did not do so in a manner consistent with the trash collection service. *Id.*

3. Bowles attempted to establish that Detective Schwomeyer stepped onto the property by measuring the length of the detective's arms and then introducing into evidence measurements from the street to behind the mailbox where the trash was situated. However, as the trial court noted, "[t]his attempt did not take into account the officer's ability to bend forward at the waist and ankles." Appellant's App. p. 31.

trash was situated close to the edge of Bowles' driveway and to the street. If Detective Schwomeyer did in fact step onto the property, he would have only had to have gone one or two feet onto the property to retrieve the bags. Bowles had placed his trash out for collection and Detective Schwomeyer seized his trash bags in a manner consistent with those whose duty it was to pick up the garbage bags for collection. Moreover, there is no indication in the record that Detective Schwomeyer's activities disturbed any of Bowles' neighbors. Accordingly, we conclude that the search and seizure of Bowles' trash was reasonable under the totality of the circumstances and did not violate Article One, Section Eleven.

## II. Failure to File the Probable Cause Affidavit

Bowles next argues that the search warrant issued as a result of the trash search is invalid because Detective Schwomeyer did not file the probable cause affidavit until after the warrant was issued and executed. Pursuant to Indiana Code section 35–33–5–2(a),

Except as provided in section 8 of this chapter, *no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:*

(1) particularly describing:

(A) the house or place to be searched and the things to be searched for; or

(B) particularly describing the person to be arrested;

(2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:

(A) the things as are to be searched for are there concealed; or

(B) the person to be arrested committed the offense; and

(3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

Ind.Code § 35–33–5–2(a) (1998) (emphasis added).

After he prepared the search warrant and probable cause affidavit on March 5, 2003, Detective Schwomeyer took them to Magistrate William Schabler who reviewed the affidavit and warrant and signed the warrant. Tr. pp. 5–6. However, Detective Schwomeyer did not leave a copy with Magistrate Schabler. He served the warrant on Bowles that same day. The next day, Detective Schwomeyer filed the affidavit and warrant in the clerk's office. Tr. p. 7.

Bowles contends that the manner in which Detective Schwomeyer filed the affidavit is common in Marion County.

The various law enforcement agencies in Marion County engage in a systemic disregard of the absolute necessity of filing the affidavit before a search warrant issues. In this case, as in every case, they presented their typed affidavit and search warrant to a judge and left with the only copy or copies. Not only did Det. Schwomeyer not deliver the affidavit to the proper office for keeping on file in the proper place he did not leave a copy with anyone, not even the issuing magistrate.

Br. of Appellant at 8. Moreover, Bowles asserts that when an affidavit is filed before the warrant is issued as required by section 35–33–5–2(a), "it is possible to determine whether there was more than one attempt at obtaining a search warrant on the same or similar facts." Br. of Appellant at 8–9.

In *Cutter v. State*, 646 N.E.2d 704, 711 (Ind.Ct.App.1995), *trans. denied,* the defendant argued that a search warrant was defective because it did not comply with Indiana Code section 35–33–5–8, the stat-

ute setting forth the procedure for establishing probable cause orally or by telephone. There the defendant noted that the telephone conversation was not taped by the judge and section 35–33–5–8 requires that "the judge shall record the conversation on audio tape." *Id.* at 711–12. We observed that the purpose of that requirement is to insure that a reliable audiotape of the proceeding is made and that the issuing magistrate is responsible for insuring that occurs. *Id.* at 712. Although the judge did not tape the conversation, the prosecutor informed the judge that the proceeding was being recorded. *Id.* We therefore declined the defendant's invitation "to elevate form over substance" and concluded that the purposes of the taping requirement were met because the taping of the telephonic probable cause hearing was in "substantial compliance" with section 35–33–5–8. *Id.*

■ In this case, it is undisputed that Detective Schwomeyer failed to file the affidavit before the search warrant was issued. *See Thompson v. State*, 190 Ind. 363, 367, 130 N.E. 412, 413 (Ind.1921) ("Merely exhibiting an affidavit to the judge, or executing it before him, is not a 'filing' of the affidavit with the judge.").[4] However, Detective Schwomeyer did file the affidavit the next day. Although we do not condone Detective Schwomeyer's failure to file the affidavit as required by section 35–33–5–2(a), under the circumstances of this case, we conclude that Detective Schwomeyer substantially complied with the statute when he filed the affidavit the next day.[5] As the trial court noted in its order denying the motion to suppress, "[t]he fact of filing or of non-filing does not affect the important functions of the warrant requirement, i.e., the establishment of probable cause, the 'particularness' of descriptions, and the prior approval of a magistrate." Appellant's App. p. 32. Moreover, Bowles does not contend that he was prejudiced by Detective Schwomeyer's failure to file the affidavit precisely according to the statute. The affidavit was filed and available to Bowles for preparation of his defense.[6]

### III. Probable Cause to Issue the Search Warrant

Finally, Bowles argues that the search warrant was not supported by probable

---

4. In *Thompson,* our supreme court held that where the affidavit was sworn to before the issuing judge on the date the search warrant was issued, but not filed until over two weeks later, "the warrant was not supported by 'oath or affirmation,' as required by the constitutional provision against unreasonable search and seizure, and was illegal." *Id.* at 368, 130 N.E. at 413. The State contends that our supreme court's holding in *Thompson* has been superceded by *U.S. v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which established the good faith exception, and Indiana Trial Rule 61, which took effect in 1970 and provides that error in the admission or exclusion of evidence is subject to a harmless error analysis. Br. of Appellee at 9–10.

5. Bowles alleges in his brief that failing to file the affidavit before the search warrant is issued is a widespread practice in Marion County. We urge law enforcement officers to abandon that practice and to comply with the requirements of section 35–33–5–2(a). Although we have determined that Detective Schwomeyer substantially complied with the statute in this case, we can envision other circumstances that could arise which would lead to the opposite result.

6. As we noted above, Bowles asserts that the practice of failing to file the affidavit with the magistrate could encourage law enforcement officers to "forum shop" for magistrates if the application for a search or arrest warrant is initially denied. However, Bowles does not contend that this occurred in his case. Moreover, we observe that if such "forum shopping" were to occur, a defendant may utilize any evidence of such conduct to challenge the probable cause determination at trial and on appeal.

cause. Specifically, he argues that the items discovered as a result of the trash search "did not make it probable that any similar items of contraband would be in the home to be searched at the time the search warrant was sought or issued." Br. of Appellant at 6.[7]

Both the Fourth Amendment of the United States Constitution and Article One, Section Eleven of the Indiana Constitution demand that no search warrant be issued unless it is supported by probable cause. "Probable cause is 'a fluid concept incapable of precise definition ... [that] is to be decided based on the facts of each case.'" *Creekmore v. State*, 800 N.E.2d 230, 233 (Ind.Ct.App.2003) (quoting *Figert v. State*, 686 N.E.2d 827, 830 (Ind.1997)). In deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Query v. State*, 745 N.E.2d 769, 770 (Ind.2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Id.* It is clear that a "substantial basis" requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Houser v. State*, 678 N.E.2d 95, 99 (Ind.1997). A "reviewing court" for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. *Id.* at 98. In this review, we consider only the evidence presented to the issuing magistrate and not post hoc justifications for the search. *Query*, 745 N.E.2d at 771.

In this case, the affidavit describes the trash search which took place on March 4, 2003, and the items recovered from Bowles' trash.[8] Those items listed in the affidavit include multiple seeds and stems, later confirmed to be marijuana, numerous plastic baggies with the corners torn off, approximately twenty-five ripped open plastic baggies containing a white powdery substance later identified as cocaine residue, and mail and a sales receipt with Bowles' name on them. Appellant's App. pp. 16–17. With regard to the baggies with torn corners, Detective Schwomeyer stated in the affidavit that he "found this practice of utilizing only the corner of a sandwich baggy to be congruent to the actions of narcotics dealers when they are

7. The State argues that Bowles has waived this issue. However, Bowles did raise the issue in his motion to suppress, which states: "The affidavit of probable cause executed in support of the issuance of the search warrant failed to establish a sufficient nexus between the items of contraband described and the place sought to be searched." *See* Appellant's App. p. 29.

8. The probable cause affidavit also provides that Detective Schwomeyer began an investigation of Bowles' residence on June 25, 2002, and that he "received information from a confidential informant (CI) that Dari-us Bowles frequently sold cocaine out of his residence at 9421 Timberview Drive." Appellant's App. p. 16. However, there is no statement in the affidavit indicating when Detective Schwomeyer received the information from the informant nor are there any facts establishing the informant's credibility as required by Indiana Code section 35–33–5–2(b). Therefore, we do not consider any information Detective Schwomeyer received from the informant in determining whether the search warrant was supported by probable cause. *See Frasier v. State*, 794 N.E.2d 449, 456 (Ind.Ct.App.2003).

packaging their product for distribution." *Id.* Similarly, Detective Schwomeyer stated that the baggies with the powdery residue "coincides with his past experience with narcotics dealers who purchase powder cocaine and cook it in cocaine base commonly referred to as 'crack.'" Appellant's App. p. 17.

■ "An affidavit demonstrates probable cause to search premises if it provides a sufficient basis of fact to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." *Utley v. State,* 589 N.E.2d 232, 236 (Ind.1992). Moreover, "the character of the criminal activity under investigation is an important fact to consider when determining whether contraband or the evidence of a crime is still in a particular place." *Breitweiser v. State,* 704 N.E.2d 496, 500 (Ind.Ct.App. 1999).

Our courts have not yet considered whether evidence obtained from a single trash search may be sufficient to support probable cause. In his brief, Bowles relies on two Florida decisions in which the Florida Court of Appeals concluded that evidence obtained from a single trash search after an anonymous tip was insufficient to establish probable cause. Br. of Appellant at 17–18 (citing *Gesell v. State,* 751 So.2d 104, 105 (Fla.Ct.App.1999) and *Raulerson v. State,* 714 So.2d 536, 537 (Fla.Ct.App. 1998)); *see also U.S. v. Elliott,* 576 F.Supp. 1579, 1581–82 (1984). Initially, we observe that the circumstances presented in the Florida decisions relied on by Bowles are distinguishable from those presented in this case. In *Gesell,* the officers discovered only a residual amount of marijuana in a plastic bag and in *Raulerson,* the officers found two cannabis cigarette butts, stems, seeds, and cannabis particles. *Gesell,* 751 So.2d at 105; *Raulerson,* 714 So.2d at 537.

Moreover, other courts have held that evidence obtained from a single trash search may be sufficient to establish probable cause. *See e.g. U.S. v. Briscoe,* 317 F.3d 906 (8th Cir.2003) (Marijuana seeds and stems found in the defendant's trash after a single trash search "were independently adequate to establish probable cause for the search warrant."); *Missouri v. Bordner,* 53 S.W.3d 179, 182 (Mo.Ct. App.2001), *trans. denied; State v. Johnson,* 531 N.W.2d 275, 278 (N.D.1995); *State v. Brown,* 20 Ohio App.3d 36, 20 OBR 38, 484 N.E.2d 215, 219 (1984) (Marijuana found in an number of smaller plastic bags as a result of a single trash search was sufficient to establish probable cause to believe that marijuana would be found in the defendant's apartment.).

Finally, we observe that in *Breitweiser,* our court concluded that marijuana stems found during two trash searches conducted a week apart was sufficient to establish probable cause to believe that marijuana would be present in the defendant's home at the time the warrant was issued eight days after the second trash search. 704 N.E.2d at 500. "The quantity and size of the fragments of marijuana plants and the repeated evidence of drug activity suggests habituating and continuing use of marijuana at the residence. This same evidence also suggests [ ] ongoing marijuana cultivation at the residence. Both activities constitute crimes of a protracted and continuing nature." *Id.*

■ In this case, in addition to finding marijuana seeds and stems in Bowles' trash, Detective Schwomeyer also discovered items, i.e. numerous plastic baggies with the corners torn off and approximately twenty-five baggies containing a powdery cocaine residue, leading him to conclude that Bowles was dealing illegal narcotics. Often, dealing illegal narcotics is a crime of a protracted and continuing

nature. The condition and number of the baggies found in Bowles' trash also reasonably lead to the conclusion that Bowles' alleged dealing was not a one time occurrence. Moreover, we note that the search warrant was issued and executed one day after the trash search was performed. Therefore, it was reasonable for the issuing magistrate to conclude that there was a fair probability that contraband or evidence of narcotics use and dealing would be found in Bowles' residence. Accordingly, under the facts and circumstances of this case, we conclude that the search warrant was supported by probable cause and the trial court properly denied Bowles' motion to suppress.

### Conclusion

The trial court properly denied Bowles' motion to suppress. The search and seizure of Bowles' trash did not violate his rights under Article One, Section Eleven of the Indiana Constitution. Moreover, the search warrant was valid and supported by probable cause.

Affirmed.

DARDEN, J., and FRIEDLANDER, J., concur.